UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Ronald L. Boyer,

Plaintiff

v.

ORDER
and
REPORT AND RECOMMENDATION

Kathleen Hawk Sawyer; Marty C. Anderson; Deborah Hickey; Tracy Kilsdonk; Sue Pedersen; Mark Diggan; Neal Johnson; and G. Truehart,

Defendants.

Civil No. 01-580 (JMR/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 12th day of December, 2001.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the Plaintiff's Motion for Summary Judgment, and upon the Defendants' Motion to Dismiss. For these purposes, the Plaintiff appears pro se, and the Defendants appear by Patricia R. Cangemi, Assistant United States Attorney. For reasons which follow, we recommend that the Defendants' Motion to Dismiss be granted, so as to dismiss Defendant Kathleen Hawk Sawyer ("Sawyer") from the case and, since Count Four of the Plaintiff's Complaint is asserted

(42) + (43)

FILED DEC 12 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK JH

solely against Sawyer, to likewise dismiss that claim, but without prejudice to its renewal. In addition, we recommend that the Defendants' Motion to Dismiss the remaining claims be granted, but without prejudice as to their renewal when, or if, the Plaintiff has properly exhausted the administrative remedies, that are available to him, as to those claims. Lastly, we recommend that the Plaintiff's Motion for a Temporary Restraining Order, for a Preliminary Injunction, and for Summary Judgment, be denied as moot, and we deny his Motion for Production and Inspection of Documents, and the Defendants' Motion to Stay Discovery, as moot.

## II. Factual and Procedural History

The Plaintiff is an inmate at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). He is incarcerated with the Bureau of Prisons ("BOP") as a result of a sentence, which was issued by the United States District Court for the Southern District of Illinois on March 23, 1990, following the Plaintiff's conviction on charges that he engaged in a conspiracy to distribute cocaine, and that he distributed cocaine, in violation of Title 21 U.S.C. §§841(a)(1), and 846.

In April of this year, the Plaintiff commenced this action by filing a Complaint, which alleges that several employees of FCI Sandstone retaliated against him, through various means, for filing a complaint against the Defendant Kilsdonk, who is a Unit Manager

at FCI Sandstone, and for providing legal assistance to other inmates. The Plaintiff alleges that this act of retaliation violated his Constitutional right of access to the administrative remedy process, and his right to provide other inmates with legal assistance. As a second claim, the Plaintiff maintains that the Defendant Deborah Hickey ("Hickey"), who is an Associate Warden, and Kilsdonk, violated his First Amendment right of free speech, by ordering him not to speak to the visiting Regional Director, on threat of discipline. The Plaintiff also contends that the Defendant Marty C. Anderson ("Anderson"), who is the Warden at FCI Sandstone, failed to properly train, supervise, control, and discipline his employees, failed to protect the Plaintiff from the reprisals he has alleged, and promoted and encouraged such reprisals. Lastly, the Plaintiff seeks a declaration that the BOP's Program Statement 1315.07 is unconstitutionally vague and overbroad, and violates his right of access to public legal records, and to the Courts.

## III. Discussion

In seeking a dismissal of the Plaintiff's Complaint, the Defendants contend that a dismissal, without prejudice, is proper because the Plaintiff has failed to exhaust the administrative remedy process, as is required by the Prison Litigation Reform Act ("PLRA"), Title 42 U.S.C. §1997e, and that, in the absence of such

exhaustion, he may not properly advance his claims in this Court. The Plaintiff counters that "it would be improper" for this Court to dismiss his claims for a failure to exhaust, because the claims have now been "fully exhausted for all practical purposes." Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Response"), at 9.[1]

[1]The Plaintiff also contends that "the Defendants' must assume some responsibility for the delay in [his] being able to timely exhaust his administrative remedies" because Anderson "forced [the Plaintiff] to pursue first an 'Informal Resolution,' which is an unnecessary step in the appealing of a decision rendered by the [Unit Disciplinary Committee], as set forth in [BOP Program Statement] 5270.07, Chapter 8, [paragraph] 2." Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Response"), at 9. The Defendants counter that BOP Program Statement 1330.13 provides that a "Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals" and, as such, Anderson "acted in accordance with the Bureau policy as it pertains to the administrative remedy program, and not in an attempt to impede the plaintiff's access to the administrative remedy process." Defendants' Response to Plaintiff's Response to Defendants' Motion to Dismiss, at 7, and at n. 2. Having reviewed both BOP Program Statements, and the relevant portions of 28 C.F.R. §§541.19, and 542.14(d)(2), we find no violation of law as the Regulations provide specifically, that "[t]he reviewing official for decisions by the UDC is the Warden," but that "[a]n inmate's initial appeal of a decision of the [Disciplinary Hearing Officer] should be filed directly to the appropriate Regional Office." BOP Program Statement 5270.07, at Chapter 8, page 1. Since the Plaintiff complains about delay in appealing the decisions of the UDC, and not the Disciplinary Hearing Officer, the Warden was the appropriate reviewing official and, under BOP Program Statement 1330.13, he had the discretion to refer the Plaintiff's appeal to the informal process. Therefore, we reject, as without merit, the Plaintiff's claim that the Defendants' actions in any way delayed his ability to exhaust his claims.

A. The Plaintiff Failed to Meet the Exhaustion Requirements of the PLRA Prior to Bringing his Claim.

The Defendants argue that we are obligated to dismiss the Plaintiff's claims under the exhaustion requirement contained in the PLRA. The Defendants contend that, rather than exhausting the administrative process, the Plaintiff improperly filed a contemporaneous Complaint with this Court. Thus, the Defendants urge that the Plaintiff's claims must be dismissed.

1. Standard of Review. The Supreme Court has explained that "the doctrine of exhaustion of administrative remedies is one among related doctrines * * * that govern the timing of federal-court decisionmaking," and that the "rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts," "is required because it serves the twin purposes of protecting the administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 144 (1992).[2] Those purposes then, serve as the backdrop to our consideration of

[2]In actuality, the specific holding, in McCarthy v. Madigan, 503 U.S. 140 (1992), is inapplicable to our determination, as that holding has been overruled by the amendments to the PLRA, which were enacted in 1996, and which made exhaustion mandatory, rather than discretionary as it had been when the Supreme Court decided that case. See, Chelette v. Harris, 229 F.3d 684, 687 (8th Cir. 2000). However, the Supreme Court's comments, in McCarthy, which concern the general purposes served by exhaustion have not lost their legitimacy and force, and they continue to guide the Court on the "long * * * acknowledged" purposes of the exhaustion requirement.

the exhaustion requirement that Congress included in the PLRA, by providing as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. §1997e(a).

The Supreme Court has construed this provision broadly, and has held that the doctrine requires prisoners to exhaust all available administrative processes, where those processes have the authority to take some remedial action, even if they cannot take the specific remedial action that is demanded by the prisoner. See, Booth v. Churner, 531 U.S. 956 (2001).

FCI Sandstone, like other Federal prisons, follows the sequential grievance system enunciated in 28 C.F.R. §§542.10 through 542.16. Under that framework, when a prisoner brings a complaint, he is first required to "present [the] issue of concern informally to staff," who "attempt to informally resolve the issue." 28 C.F.R. §§542.13(a) and 542.14(a). If the inmate is not satisfied with that informal resolution, he may then file a Request for Administrative Remedy with the Warden. Id. To appeal a Warden's decision, an inmate must file an appeal with the Regional Director, 28 C.F.R. §542.15(a), and "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal" to the Cen-

tral Office,[3] which is "the final administrative appeal." 28 C.F.R. §542.15(a). If, instead, the inmate is appealing a disciplinary decision rendered against him by a Discipline Hearing Officer ("DHO"), the prisoner bypasses the initial, informal, in-house steps, and appeals such decisions directly to the Regional Director, and then to the Central Office, if unsatisfied. 28 C.F.R. §542.14(d)(2). Therefore, in order to have exhausted the administrative grievance procedure, an inmate must have followed the sequential process through to a determination by the Central Office.

2. Legal Analysis. The Defendants argue that, because the Plaintiff had not exhausted the administrative remedies, which were available to him at the time that he filed his claim with this Court, he has not yet exhausted those administrative remedies, and his claims must be dismissed. In contrast, the Plaintiff maintains that, because his claims were exhausted prior to our consideration of his case, a dismissal would be improper.

[3]28 C.F.R. §542.15(a) requires an appeal to the General Counsel, but that is accomplished by filing Form BP-231, which is the "Central Office Administrative Remedy Appeal" form. Thus, for our purposes, to facilitate our determination as to whether the Plaintiff has met the administrative exhaustion requirement, we will refer to this step of the administrative process as the appeal to the Central Office.

In support of his contention, the Plaintiff points to the Seventh Circuit's decision in Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir. 1999), which held that a claimant's "[f]ailure to exhaust administrative remedies does not deprive a court of jurisdiction." The Eighth Circuit has similarly held that the "failure to exhaust administrative remedies under section 1997e(a) does not deprive a federal court of jurisdiction." Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000). The Plaintiff, citing to the Eighth Circuit's holding in Williams v. Norris, 176 F.3d 1089 (8th Cir. 1999), argues that we have the jurisdiction, and "the authority to reach the merits" of his claims, as his "claims will be fully exhausted by the time this Court rules on Defendants' Motion to Di[s]miss." Plaintiff's Response, at 8. In Williams, the Court determined that a District Court had improperly granted Summary Judgment to a defendant where the "record demonstrate[d] that [the plaintiff's] grievance had been" exhausted "at the time the Court ruled." Williams v. Norris, supra at 1090.

The Defendants respond that the Plaintiff's reliance on Perez, and Williams, is misplaced. In particular, the Defendants contend that, in Perez, the Seventh Circuit rejected a similar argument concerning claims which had been exhausted after the filing of the Complaint, but before the Court's consideration of the case, and held that Section 1997e(a) did not make "exhaustion a precondition

to judgment" but, rather, made exhaustion "a precondition to suit." The Court went on to find that, in filing his complaint before he had satisfied the exhaustion requirements of Section 1997e(a), the plaintiff had violated the PLRA. Perez v. Wisconsin Dept. of Corrections, supra at 534-35.

As to the Plaintiff's reliance on Williams, the Defendants have noted that the Court's Opinion did not contain sufficient facts to ascertain whether the plaintiff, there, had exhausted his claims prior to bringing suit in the Federal system and, more importantly, that Williams was issued before the Supreme Court's decision, in Booth v. Churner, supra, where the Supreme Court construed the PLRA's exhaustion requirement to apply more broadly than had been previously considered. Our review of these conflicting interpretations of the law convinces us that, if all of the Plaintiff's claims were now exhausted, then we should not dismiss his cliams for inexhaustion, but if his claims remain unexhausted, then we must dismiss his Complaint.

Our view of the law is guided by two related Eighth Circuit cases -- Williams v. Norris, supra, and Graves v. Norris, 218 F.3d 884 (8th Cir. 2000). As we have already related, in Williams v Norris, supra at 1090, the plaintiff appealed a District Court's Order which had dismissed his claim for a failure to exhaust and, in a brief decision, the Court reversed that Order, and stated that

such a dismissal was improper "as the record demonstrate[d] that [the plaintiff's] grievance had been" exhausted by "the time the court ruled." In Graves v. Norris, supra at 885, the plaintiffs also appealed a District Court's dismissal of their claims for inexhaustion, and argued that "the district court abused its discretion in dismissing the suit without prejudice because their prison grievances were in process when the suit was filed, and some grievances were administratively denied before the court ruled." Our Court of Appeals rejected that argument, and held that, "[w]hen multiple prison condition claims have been joined * * * the plain language of §1997e(a) requires that all available prison grievances must be exhausted as to all of the claims." Id. Therefore, finding that it was "apparent that at least some of the plaintiffs' many claims were not fully exhausted at the time the district court dismissed the action without prejudice," the Court determined that the District Court's dismissal had been proper. Id.

Importantly, during the appeal in Graves, the defendants there had moved the Court of Appeals to reconsider its decision in Williams, urging that the Williams decision was "contrary to the plain language of § 1997e(a)." Williams v. Norris, supra at 885. The Court addressed that contention by distinguishing Graves, from Williams, based upon the fact that, in Graves, the plaintiff had some claims which had not been exhausted at the time that the Court had

considered the case, whereas, in Williams, all of the plaintiff's claims had been exhausted prior to the District Court's ruling. Given these decisions, we conclude that, if the Plaintiff has now exhausted **all** of his claims then, under Williams, we may consider them on their merits but, if any of those claims remain unexhausted, then Graves requires that we dismiss his Complaint. Accordingly, we turn to a consideration of whether the Plaintiff has now exhausted the six claims that he raises here, and we address them in chronological order.

a. The Plaintiff's Complaint that Kilsdonk and Hickey Violated His First Amendment Right of Free Speech.

The Plaintiff's First Amendment claim arises out of his interest in speaking with Mr. Hershberger, who is a Regional Director of the BOP, when Hershberger visited FCI Sandstone on February 14, 2001. Apparently, the Plaintiff thought that Hershberger had denied him an escorted visit pass, and he wanted to address the matter with Hershberger. When the Plaintiff saw Hershberger in the prison's cafeteria, he asked one of the guards if he might speak with Hershberger, and was told that he could. The Plaintiff approached Hershberger, who said that he was willing to speak with the Plaintiff after he had finished his business in the cafeteria. The Plaintiff asserts it was then that he noticed

Hickey, and Kilsdonk, staring at him "in a threatening manner," and that, soon thereafter, Kilsdonk approached him, directed him not to speak with Hershberger, and instructed him to "sit down, before [she had] to call the Captain." Complaint at 8.

On February 21, 2001, the Plaintiff filed an "Administrative Remedy Procedure for Inmates Informal Resolution Form" against Kilsdonk, and Hickey, alleging that they had deprived him of his First Amendment right of free speech. Plaintiff's Exhibit E. The Correctional Counselor ("CC") denied the Plaintiff's claim. On March 5, 2001, the Plaintiff appealed the CC's determination by filing a Request for Administrative Remedy with the Warden, which was denied on March 15, 2001. Subsequently, on March 26, 2001, the Plaintiff filed an appeal to the Regional Director, and then an appeal to the Central Office which, on July 20, 2001, denied the Plaintiff's appeal. Id.

Given this history, we find that, while the Plaintiff had not exhausted the administrative process as to this claim, at the time he filed his Complaint on April 4, 2001, the claim has now been fully exhausted.

b. Disciplinary Action Against the Plaintiff for Attempted Possession of Another's Property, and Insolence Towards a Staff Member.

The Plaintiff's second claim arises from a complaint that was filed against him on February 26, 2001, for the alleged offenses of "Attempted Possession of Another's Property," and "Insolence Towards a Staff Member." Plaintiff's Exhibit A. According to that complaint, which was filed by the Defendant Mark Diggan ("Diggan"), the Plaintiff asked Diggan for property belonging to another inmate and, when Diggan refused to provide the property to the Plaintiff, the Plaintiff swore at him, and spoke to him in a loud, and threatening voice. The Plaintiff denied being threatening, but he was found to have committed the offense.

On March 6, 2001, the Plaintiff filed a Request for Administrative Remedy with Warden Anderson and, after being told twice that he must first go through an informal resolution, see footnote 2, supra, he was heard on that claim by the Regional Office. Plaintiff's Exhibit A. On June 12, 2001, the Regional Office ordered the UDC to rehear his complaint. Plaintiff's Exhibit G. On June 14, 2001, the rehearing decision was issued, and the previously imposed sanctions were upheld. Plaintiff's Exhibit H.

In the Plaintiff's Response, at page 5, the Plaintiff affirmatively states that, as to these charges, he had exhausted the

administrative remedies that were available to him. We cannot agree. As the Defendants note, the Regional Office ordered the rehearing upon findings of "errors in the discipline process." Supplemental Declaration of Mary A. Benning, Attachment A and Attachment B. The notice sent to the Plaintiff concerning the rehearing expressly informed him that the rehearing was granted to rectify those procedural errors, and that, "[a]t the conclusion of" those Hearings, he might "reinstate any contentions through the Administrative Remedy process to the Regional Office." Id.

It is clear that the Regional Office, when it considered the Plaintiff's appeal, did not reach the underlying merits of the charges against him, but ordered a rehearing solely on the basis of procedural errors. It is equally apparent that, in the event that the Plaintiff was displeased with the results of the rehearing, he might appeal that decision to the Regional Office, and then to the Central Office, if still unsatisfied. The Plaintiff has not taken those steps, apparently because he believes that he had exhausted this claim. However, Section "1997e(a) says nothing about a prisoner's subjective beliefs * * * about the administrative remedies that might be available to him," rather its "requirements are clear: If administrative remedies are available, the prisoner must exhaust them." Chelette v. Harris, supra at 688. As administrative remedies remain available to the Plaintiff as to the

charges of "Attempted Possession of Another's Property and Insolence Towards a Staff Member," which were filed against him on February 26, 2001, we cannot find that the Plaintiff has exhausted this claim.

We might, under Graves v. Norris, supra, stop our analysis at this point, for we have found that at least one of the Plaintiff's many claims has not been exhausted but, in the interests of completeness, we will address his remaining complaints.

c. The Disciplinary Action Against the Plaintiff for Conducting a Business.

On February 26, 2001, another complaint was filed against the Plaintiff, in which it was alleged that he was in violation of prison rules which prohibit inmates from conducting a business. After the previously referenced disciplinary incident, the Defendant G. Truehart ("Truehart") conducted a property inventory of the Plaintiff's cell, and found legal documents belonging to other inmates, as well as a business card which read "Boyer's Legal Services, Ronald Boyer, Paralegal/Investigator." Plaintiff's Exhibit C. Instead of finding that the Plaintiff was guilty of conducting a business, the UDC found that the Plaintiff was in "Possession of Anything Not Authorized." On March 6, 2001, the Plaintiff filed a Request for Administrative Hearing, which was denied by Warden Anderson on April 18, 2001. On appeal to the

Regional Office, the UDC was again ordered to rehear the complaint, because of the Regional Office's finding of procedural errors. Plaintiff's Exhibit G. The Rehearing Decision was issued on June 19, 2001, and, on this occasion, the UDC recommended removing the previous sanctions from the Plaintiff's record, observing that it had reached an informal resolution with the Plaintiff, under which he was to "review his legal material to remove reference to names, document title, and case caption," so that the documents would abide with the requirements of BOP Program Statement 1315.07, which governs an inmate's possession of legal materials. Plaintiff's Exhibit J.

By every appearance, this claim was resolved in the Plaintiff's favor. While, in the end, there was no affirmative statement as to whether the Plaintiff was in violation of any rule, his discipline was vacated. Therefore, at the time that the informal accord was reached, there was nothing for the Plaintiff to appeal. Accordingly, as to the complaint that the Plaintiff was "Conducting a Business," which was changed to a "Possession of Anything not Authorized," we find that the Plaintiff has now exhausted his available administrative procedures.

d. Disciplinary Action Against the Plaintiff for Possession of Anything Not Authorized.

Also on February 26, 2001, during the same property inventory, Truehart found a radio, and he filed a complaint against the Plaintiff for "Possession of Anything not Authorized," on the basis that the radio displayed two different colors, and had two different identification numbers etched into it. Plaintiff's Exhibit B. The Plaintiff was found to have committed this offense and, on March 6, 2001, the Plaintiff filed a Request for Administrative Remedy. Although the Plaintiff does not provide us with the Warden's response, or the record of an appeal to the Regional Director, he did provide documentation of his Central Office Administrative Remedy Appeal. The Central Office, on August 13, 2001, denied his appeal. Thus, while this denial came after the Plaintiff initiated this suit, it appears that he has now exhausted his administrative remedy in regard to the charged of "Possession of Anything Not Authorized."

e. Disciplinary Action Against the Plaintiff for Being in an Unauthorized Area.

On March 26, 2001, the Plaintiff was on restriction to his quarters as a result of the discipline imposed from being found to have committed the offenses of "Attempted Possession of Another's Property," and "Insolence Towards a Staff

Member." Claiming that the Plaintiff had violated those restrictions by being in the Leisure Library, Diggan filed an incident report against the Plaintiff for "Being in an Unauthorized Area." Plaintiff's Exhibit L. Rather than deciding the case, the UDC referred the complaint to the DHO who, on April 14, 2001, issued his report which found that the Plaintiff did not commit the act charged, but did commit another violation, that of "Conduct Which Disrupts/Most Like Refusing a Written Order." On April 20, 2001, the Plaintiff filed a Regional Administrative Remedy Appeal which, on May 31, 2001, was denied. Plaintiff's Exhibit L. On June 11, 2001, the Plaintiff filed a Central Office Administrative Remedy Appeal and, on August 13, 2001, the National Inmate Appeals Administrator issued his decision denying that appeal.

Again, we find that, as to the complaint against the Plaintiff for "Being in an Unauthorized Area," which was changed to "Conduct Which Disrupts/Most Like Refusing a Written Order," the Plaintiff has now exhausted his available administrative process.

f. Plaintiff's Complaint that a Prison Employee Photographed Him Without Permission, in Violation of his Constitutional Rights.

On March 31, 2001, the Plaintiff filed a complaint which alleged that the Defendant Neal Johnson photographed him, and another inmate, while they were engaged in legal research,

and that this violated his constitutional rights. On April 10, 2001, the Warden responded to the Plaintiff's Request for Administrative Remedy, by denying the Plaintiff's request. Plaintiff's Exhibit M. The Plaintiff appealed to the Regional Director, who denied the appeal. On June 11, 2001, the Plaintiff filed a Central Office Administrative Remedy Appeal. Plaintiff's Exhibit W. Thereafter, on August 13, 2001, the final administrative decision on this claim was issued, which denied his appeal. Therefore, the Plaintiff has now also properly exhausted this claim.

C. Conclusion. In sum, we have found that, while at the time that the Plaintiff filed his Complaint he had not yet exhausted any of the underlying claims, by the time we considered this case, the Plaintiff had exhausted all but one of those claims -- namely, the two count "Attempted Possession of Another's Property," and "Insolence Towards a Staff Member," which were originally filed against him on February 26, 2001. Having so found, we are compelled by the holding in Graves v. Norris, supra, to dismiss

the Plaintiff's case without prejudice,[4] until such time as he has fully exhausted those administrative remedies available to him.[5]

---

[4]The Defendants have also moved to dismiss the Plaintiff's complaints on the basis that they enjoy qualified immunity from suit. Since we have recommended dismissal of the Plaintiff's claims for failure to exhaust, and because a determination of whether qualified immunity exists in a given situation necessarily depends on an analysis of the facts, including the events surrounding the charges filed, as well as the evidence supporting such charges -- particularly in the context of a retaliation claim -- we recommend that this part of the Defendants' Motion to Dismiss be denied as moot, but the Defendants may reassert this defense if, or when, the Plaintiff refiles his Complaint after exhausting his remedies.

[5]The Defendants argue, and the Plaintiff concedes, that Sawyer must be dismissed from the case because the doctrine of respondeat superior is insufficient to support liability in a Bivens claim, and because we lack personal jurisdiction over her. Our Court of Appeals has held, on repeated occasion, that Bivens actions cannot be premised on respondeat superior liability. See, Buford v. Runyon, 160 F.3d 1199, 1203 n.7 (8th Cir. 1998); Wilson v. City of North Little Rock, 801 F.2d 316, 322-23 (8th Cir. 1986). Here, the Plaintiff only alleges, against Sawyer, a respondeat superior action. However, under Title 42 U.S.C. § 1997e(c)(2), when a claim, "on its face," "fails to state a claim upon which relief can be granted," we "may dismiss the underlying claim without first requiring exhaustion of administrative remedies." Thus, having found that the Plaintiff's claim against Sawyer, "on its face * * * fails to state a claim upon which relief can be granted," we recommend that she be dismissed from this action. Given his recommendation, we do not reach the personal jurisdiction issue.

In addition, because we recommend Sawyer's dismissal, we also recommend that Count Four of the Plaintiff's Complaint, which alleges that "BOP Program Statement 1315.07 is Unconstitutionally Vague and Overbroad, and Violative of an Inmate's Right of Access to Open and Public Legal Records," be dismissed, without prejudice, as Sawyer is the only Defendant named in this Count and, upon her dismissal, the claim may not be pursued.

(continued...)

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion for Production and Inspection of Documents [Docket No. 19] is DENIED as moot.

2. That the Defendants's Motion to Stay Discovery [Docket No. 24] is DENIED as moot.

AND, It is --

RECOMMENDED:

1. That the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 2] be DENIED as moot.

2. That the Plaintiff's Motion for Summary Judgment [Docket No. 17] be DENIED as moot.

3. That the Defendants's Motion to Dismiss [Docket No 29] be GRANTED as more fully detailed in the text of this Order and Report and Recommendation.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

---

[5](...continued)
Lastly, given our recommended dismissal, the Plaintiff's Motion for a Temporary Restraining Order, for a Preliminary Injunction, and for Summary Judgment, are moot, as is his Motion for Production and Inspection of Documents, and the Government's obverse Motion to Stay Discovery. Accordingly, we deny those Motions as moot.

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 31, 2001**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 31, 2001**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.